### *In re* RUNZI and others, Bankrupts.

(*Circuit Court, S. D. Illinois.*   August, 1879.)

1. JURISDICTION—SERVICE OF PROCESS.—Suit was brought and process served upon a defendant in one county, and additional process issued and served upon another defendant in another county, under the laws of the state of Illinois.   *Held,* that it could not be objected, after judgment, that the defendant first served did not reside within the county in which suit was brought.

2. BANKRUPTCY—PREFERENCE—JUDGMENT AND EXECUTION.—It is competent for a creditor to institute a suit against a bankrupt, and obtain judgment by default, and issue execution, and unless the bankrupt does some act by which he has participated in some way in the act of the creditor, the preference thereby acquired is a valid preference as against other creditors.

3. SAME—SAME—SAME—EVIDENCE.—It will be sufficient to defeat this preference if there has been but a slight participation by the bankrupt in the act of the creditor, but the evidence of such participation must be sufficient to bring conviction to the mind.

Appeal from district court.

*J. H. Yeager,* for appellant.

DRUMMOND, C. J.   This is an appeal by the assignee of the bankrupts from an order of the district court allowing a claim of John Fischback against the estate of the bankrupts.

Fischback recovered a judgment against the bankrupts on the twenty-ninth day of March, 1878, in the circuit court of Montgomery county, of this state, under the following circumstances: Fischback had, from time to time, advanced money to the bankrupts to assist them in their business, for which he had received promissory notes.   In the spring of 1878 he seemed to be very anxious to have his claim paid or secured, and there is some evidence tending to show that the bankrupts proposed to give him a mortgage, which, however, was not done.   It is also apparent that Lehman particularly, who was the father-in-law of Fischback, was very anxious that his claim should be secured or paid.   The bankrupts knew at the time that they were insolvent, and would be unable to pay all their debts.

It seems to have been thought by Fischback, in consulta-

tion with his counsel, that the most certain way of securing his claim was to obtain a judgment against the bankrupts as early as practicable, and there being no court held in Madison county, where the bankrupts resided, in which a judgment could be obtained at an early day, it was agreed between the creditor and his counsel that service should be had upon Lehman in Montgomery county, where the court sat in March, so that a judgment could be there obtained.

The wife of Lehman informed her daughter (Fischback's wife) that her husband proposed to go to Montgomery county, and the daughter told her husband, and accordingly arrangements were made to have a suit commenced, declaration filed, and process issued and served on Lehman in Montgomery county, which was accordingly done, and then a process issued to Runzi, the other partner, to Madison county, and was served upon him there, and judgment was obtained by default against the parties.

It may be admitted that the partners were insolvent when Fischback instituted his suit to recover the judgment which constituted the foundation of his claim, and that Fischback had reasonable cause to believe that they were insolvent. But it is insisted by the assignees of the bankrupts, in the first place, that the circuit court of Montgomery county had no jurisdiction to render the judgment; and, secondly, that Lehman, the father-in-law of Fischback, aided the latter in obtaining his judgment, and thereby procured the property to be seized on the execution which was issued in the case, and that Fischback thus acquired an unlawful preference.

It is said that the court had no jurisdiction of the case, because neither of the defendants resided in Montgomery county at the time that the writ was issued and served, and that the true construction of the statute, which authorizes a suit to be commenced and process to be served on one defendant in a particular county, and then for another process to issue to a different county, to be served on another defendant, is only where one of them resides in the county where the suit is brought and the process first issues.

The language of the statute is that it shall not be lawful for any plaintiff to sue any defendant out of the county where the latter resides or may be found, except in local actions, and except that in personal actions, at law, when there is more than one defendant, the plaintiff commencing his action where either of them resides may have his writ issued directed to another county.

It will be observed that the statute, in the last clause, leaves out the words "or may be found," which existed in the first; and the question is whether it was intended to exclude the court from jurisdiction of the case where one of the defendants was found in the county, although he did not reside there. I can hardly think that this is the true construction of the statute. For the purposes which the law had in view, it may be said, I think, that wherever the defendant was found and served with process, he might be considered, as to the action, to be there a resident. Clearly, although he might be a resident, it would be indispensable that he should be found and served there; which could not be done unless he was personally in the county. Again, the authorities of this state seem to imply, if there is any objection to the form of the action, where parties reside and are served in different counties, that it is incumbent on the defendants to take advantage of the defect before judgment, by bringing the matter, in which the objection consists, to the notice of the court. Nothing of that kind was done here, and so I think the court had jurisdiction of the cause, and the judgment must be considered as operative upon the bankrupts.

As to the other objection:

The supreme court of the United States has decided in several cases that it is competent for a creditor to institute a suit against a bankrupt, and obtain judgment by default, and issue execution, and unless the bankrupt does some act by which he has participated in some way in the act of the creditor, the preference thereby acquired is a valid preference as against other creditors.

It is true, the supreme court has said that it is sufficient if

the active participation of the bankrupt is slight; and the question is whether there is any evidence in this case which shows that the bankrupts, or either of them, had any part in the scheme, which was undoubtedly devised between Fischback and his counsel, to have process served upon Lehman in Montgomery county. In other words, did Lehman go to Montgomery county in order that process might be served on him in the case, or did he connive at it, or have any intimation of the design of Fischback and his counsel? If so, then it may be said that he participated in the act, and so procured, within the language of the statute, his property to be taken upon execution, and a preference to be thereby acquired which would be unlawful. Lehman communicated his purpose to go to Montgomery county to his wife, she to her daughter, Fischback's wife, and the latter to her husband. Both Fischback and Lehman deny that the latter had any knowledge whatever of the purpose to institute suit and serve process. It is perhaps fair to say that there are circumstances in the case which look suspicious. Lehman mentioned to his partner his purpose to go, and his partner told him it was no use, but he finally concluded to go; obtained no money from the creditor of the firm, who, it is conceeded, resided in Montgomery county, but obtained notes for the debt that was due.

There seems to be a little particularity in the communication by Lehman's wife to her daughter, and by the latter to her husband, which is calculated to arouse suspicion; but it is incumbent on the assignee to prove that the bankrupts, or one of them, did procure, within the meaning of the decisions of the supreme court of the United States and of the law, a judgment and execution. There must, in other words, be sufficient evidence to bring conviction to the mind, and to enable the court to say that it believes, from the evidence, that this was the intention of the bankrupts. And the testimony hardly comes up to this demand of the law. There are suspicious circumstances, but suspicion is not enough; there must be conviction or belief of the existance of the fact.

The view which the district court took of the case was

that there was not sufficient evidence to warrant that court in holding that the judgment and execution gave an unlawful preference to Fischback, and in that opinion I concur; and therefore the decree of the district court will be affirmed.

NOTE.—See *Parsons* v. *Caswell*, 1 FED. REP. 74.